UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN THEURER<br>146 E. Phoenix Drive<br>Phoenixville, PA 19460<br><br>        Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA<br>1601 Chestnut Street<br>Philadelphia, PA 19192,<br><br>        Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:   Civil Action No.:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT**

Plaintiff, Carolyn Theurer (hereinafter "Plaintiff" or "Theurer"), hereby brings this civil action against Defendant Life Insurance Company of North America (hereinafter "Defendant" or "LINA") and states as follows in support thereof:

**NATURE OF ACTION**

1. This case involves a claim for long term disability benefits under the Vanguard Group Inc., employee welfare benefit plan ("the Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff seeks recovery of benefits under the Plan's long-term disability ("LTD") policy, number LK-0980241 ("the Policy") pursuant to 29 U.S.C. § 1132(a)(1)(B). The Policy is insured and administered by LINA.

1

## JURISDICTION AND VENUE

2. This court has jurisdiction over the issues raised herein pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3. Venue is proper in the Eastern District of Pennsylvania. *See* 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

4. ERISA provides a mechanism for administrative or internal appeal of benefits denials. *See* 29 U.S.C. §1133. Those mandatory and voluntary avenues of appeal have been exhausted in this case; therefore, this civil action has been properly filed in federal court.

## PARTIES

5. Plaintiff, Carolyn Theurer, is an adult individual currently residing in Phoenixville, PA.

6. Defendant LINA is a business entity with its principal place of business in Philadelphia, Pennsylvania, located in the Eastern District of Pennsylvania.

7. At all times relevant, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8. At all times relevant, Defendant LINA insured and administered the Plan's LTD Policy and was responsible for making claim determinations.

9. As an employee of The Vanguard Group, Inc., Plaintiff was a "participant" under the Plan, as defined by 29 U.S.C. § 1002(7), and received LTD coverage through the LTD Policy.

## CLAIM FOR BENEFITS

10. Carolyn Theurer was hired by The Vanguard Group, Inc. in January of 1999.

11. As of her last day worked, Ms. Theurer was an active full-time employee of The Vanguard Group, Inc. with the job title of Service Associate.

12. Ms. Theurer was involved in a motor vehicle accident April 3, 2014. As a result, Theurer sustained debilitating injuries, including but not limited to a labral tear of the right hip.

13. Ms. Theurer initially attempted to treat her injuries with conservative treatments, including physical therapy. After conservative treatment failed, she underwent surgery of the right hip in October of 2014.

14. Post-surgery, Ms. Theurer returned to work, but continued to struggle with the requirements of her sedentary occupation. She worked with her employer to modify her workspace to permit a sit/stand option, hoping this would allow her to continue working despite her decreasing ability to sit for prolonged periods.

15. Despite her best efforts, and after 16 years of employment with The Vanguard Group, Inc., the sedentary requirements of Ms. Theurer's occupation proved unmanageable due to her worsening physical impairments and she was forced to stop working on January 8, 2016.

16. Ms. Theurer struggles with multiple physical impairments, including but not limited to: right piriformis syndrome with the sciatic nerve piercing the piriformis muscle, chronic right hip pain, right gluteus medius tear, right trochanteric bursitis, right myofascial pain syndrome, degenerative disc disease of the lumbar spine, lumbar radiculopathy, and right carpal tunnel syndrome.

17. As a result of her medical impairments, Ms. Theurer experiences debilitating pain in her right hip as well as radiating down into her right leg with associated low back pain.

18. The Policy defines disability as follows:

> *The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
>
> *1. unable to perform the material duties of his or her Regular Occupation; and*
> *2. unable to earn 80% of more of his or her Indexed Earnings from working in his or her Regular Occupation.*
>
> *After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
>
> *1. unable to perform the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training or experience; and*
> *2. unable to earn 80% or more of his or her Indexed Earnings.*

19. The Policy defines Regular Occupation as follows:

> *The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.*

20. Per the Dictionary of Occupational Titles (DOT), Theurer's Regular Occupation is titled Support Analyst, job code 032.262-010.

21. As it is generally or normally performed, this occupation is classified by the DOT as a sedentary, skilled occupation.

22. The pertinent physical demands of Ms. Theurer's Regular Occupation include, but are not limited to, sitting most of the time and frequent reaching, handling and fingering.

23. The pertinent mental and cognitive demands of Ms. Theurer's Regular Occupation include, but are not limited to, precision work, dealing with people (i.e. constant talking and hearing), and making judgement and decisions.

24. In June of 2016, a LINA internal nurse case manager reviewed Ms. Theurer's medical records and determined that she could only perform occasional sitting; thus, rendering her Disabled from her Regular Occupation.

25. After paying benefits for eight months, and without any notable improvement in her medical condition, LINA abruptly terminated Ms. Theurer's benefits on February 9, 2017.

26. Per the denial letter, dated March 9, 2017, LINA acknowledged being advised by Ms. Theurer's treatment provider that she is unable to tolerate siting for more than 30 minutes, is unable to use all of her limbs, and experienced sedation due to her narcotic medications.

27. LINA's decision to terminate benefits was based solely upon the opinions of its own Medical Director, who offered little-to-no explanation for why he ignored the opinion and restrictions/limitations of Ms. Theurer's treatment providers.

28. As required by the Policy, Ms. Theurer filed a timely appeal of this decision and submitted evidence of continued disability.

29. In a letter dated May 22, 2017, LINA advised Ms. Theurer it was upholding its prior decision to deny continued LTD benefits under the Policy. Once again, this

decision was based solely upon opinions expressed by LINA's own internal Medical Director.

30. With the assistance of legal counsel, Ms. Theurer filed a second voluntary appeal and submitted additional evidence of Disability.

31. With this appeal, Ms. Theurer submitted substantial evidence of continued Disability per the Policy including, but not limited to, voluminous medical records from multiple providers, abnormal objective diagnostic studies, detailed restrictions and limitations from long-time treating and board-certified physiatrist Dr. Kelly Scollon-Grieve, a three-day functional capacity evaluation, and an independent medical examination from a board-certified physiatrist.

32. An April 13, 2017 EMG/NCV revealed bilateral S1 nerve root irritation, right greater than left.

33. Due to the severity of her symptoms, Theurer has consistently pursued (often paying out of pocket) conservative treatment options, including, but not limited to, lumbar steroid injections, narcotic pain medications, physical therapy, a back brace, and a TENS unit.

34. In an office note dated March 28, 2017, Dr. Scollon-Grieve advises:

> *Patient is unable to sit for more than 10 minutes. She is unable to bear weight on her right leg completely. She is able to walk but with an antalgic gait favoring her right side. She has ultrasound proven evidence of sciatic nerve piercing through her right piriformis from January 2016. Injections have provided temporary relief. She is constantly in 7/10 pain. She is being treated with pain medications from our office which can make her drowsy. She is continuing to be seen by us. We are trying to return patient to full health. She is unable to return to work at this time.*

35. In a physical therapy note dated October 23, 2017, Stephanie Bean, DPT reports that Ms. Theurer is unable to sit longer than ten minutes and must use a brace for her low back.

36. On November 08, 2017, Dr. Scollon-Grieve completed a Physical Impairment Medical Source Statement. In this statement, she provides multiple restrictions and limitations that would independently, and most certainly in combination, preclude Ms. Theurer from performing the material physical and cognitive duties of her Regular Occupation.

37. The opinion of treating specialist Dr. Scollon-Grieve is corroborated by a three-day functional capacity evaluation as well as an examining independent medical examiner, also board certified in physical medicine and rehabilitation.

38. During LINA's review of Ms. Theurer's voluntary appeal, LINA ordered an internal medical review to be conducted by Dr. Greg Smith.

39. As part of Dr. Smith's review, and per LINA's instructions, he called Dr. Scollon-Grieve to discuss Ms. Theurer's disabilities.

40. Dr. Scollon-Grieve's office staff scheduled a time for the two physicians to speak on Thursday, January 18, 2018 anytime between 10:00am and 4:00pm.

41. Dr. Scollon-Grieve called Dr. Smith on the arranged day at 12:03pm and noted in Ms. Theurer's chart that she called Dr. Smith who informed her that "he didn't need to speak to me anymore…"

42. Dr. Smith submitted his final report to LINA despite not having discussed Ms. Theurer's disabilities with her treating specialist.

43. In a letter dated February 2, 2018, LINA issued a final denial, notifying Ms. Theurer it was upholding its previous decision to deny benefits past February 9, 2017.

44. For a third time, LINA's decision was based solely upon opinions expressed by LINA's own internal Medical Directors.

45. Counsel for Ms. Theurer memorialized the issue of Dr. Smith's deficient review and potential bias in one letter dated February 6, 2018 and two letters dated February 8, 2018.

46. LINA failed to respond to Ms. Theurer's concerns over the fullness and fairness of Dr. Smith's medical review where he feigned interest in a discussion with Dr. Scollon-Grieve only to move forward with a report adverse to the claimant.

47. In its final denial letter, LINA does not even address, let alone explain why it chose to ignore the wealth of very strong and very credible evidence of continued Disability in favor of the opinions of its non-examining, non-treating, paid medical consultants.

48. LINA's decision to deny benefits was solely based upon opinions expressed by its own internal medical resources performing paper based medical reviews. These physicians never consulted with, let alone examined Ms. Theurer before providing opinions (many of which appear to be based on their own unsupported assessments of credibility) that she could perform full-time, highly-skilled sedentary work.

49. LINA failed to conduct a full and fair review of Theurer's LTD claim.

50. LINA conducted only self-serving, paper-based medical reviews with its own internal medical staff.

51. LINA failed to conduct a single external medical review of Ms. Theurer's claim.

52. LINA had the right and ability per the Policy to order an in-person medical examination of Ms. Theurer.

53. LINA did not order an in-person medical examination.

54. LINA had the right and ability per the Policy to order an in-person functional capacity evaluation of Ms. Theurer.

55. LINA did not order an in-person functional capacity evaluation.

56. LINA has an inherent structural conflict of interest acting as both the administrator and insurer of the LTD Policy.

57. LINA's denial of Theurer's claim for benefits is the result, at least in part, of the conflict between LINA's fiduciary obligations to Policy participants when determining claims under the Policy and an interest in maximizing their own profitability.

58. LINA's claim file contains obvious procedural irregularities and compelling evidence of bias.

59. Ms. Theurer has fulfilled all conditions for the receipt of benefits under the Policy and has presented such evidence to LINA.

60. LINA has made unsupported factual determinations and has wrongfully denied Ms. Theurer a full and fair review of her claim for benefits under the Policy.

61. Ms. Theurer exhausted the Plan and Policy's mandatory and voluntary administrative remedies; thus, this matter is now ripe for judicial review.

62. LINA's denial of Ms. Theurer's continued benefits is arbitrary, contrary to the weight of the evidence, and entirely unreasonable.

63. Theurer has continuously met the Policy's definition of "Disability" since she became disabled on January 8, 2016.

64. Theurer is entitled to payment of monthly benefits retroactive from February 10, 2017, the first day benefits were not paid, through present. These benefits should

be continued as long as Plaintiff remains disabled in accordance with the terms of the Plan and LTD policy.

*This space intentionally left blank.*

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant; and

B. That the Court order Defendant to pay disability to Plaintiff in an amount equal to the contractual amount of benefits to which Plaintiff is entitled; and

C. That the Court order Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment; and

D. That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g); and,

E. That Plaintiff recover any and all other relief to which Plaintiff may be entitled, including but not limited to remand to LINA for further administrative proceedings, as well as the costs of suit.

Respectfully submitted,

By: _____
Joseph Capitan, Esq.    PA Bar No. 307043
Abell & Capitan Law
1650 Market Street, 36th Floor
Philadelphia, PA 19103
Phone: (267) 419-7888
Fax: (267) 270-2998
joe@longtermdisabilitylawyers.com
*Attorney for Plaintiff, Carolyn Theurer*